# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Hal Durham, | Civ. No. 20–1250 (NEB/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| United States of America; Trumbull Memorial Hospital; Midmark Diagnostics Group; Dr. Larry Woods, D.O.; John R. Becker, M.D.; Holly Martinez, D.O.; and John and Jane Does #1–10, | |
| Defendants. | |

Hal Durham, *pro se* Plaintiff.

Kristen E. Rau, Esq., United States Attorney's Office, counsel for United States.

Nicholas A. Rauch, Esq., and Shawn M. Raiter, Esq., Larson King LLP, and Brandon D. Wright, Esq., and Donald E. Burton, Esq., Faruki PLL, counsel for Midmark Corp.

BECKY R. THORSON, United States Magistrate Judge.

## I.    BACKGROUND

Plaintiff Hal Durham filed suit on May 26, 2020, with his "Federal Tort Complaint for Personal Injury and Medical Malpractice." (Doc. No. 1, Compl.) In a three-week span in May or June 2016, Durham, a then-inmate at FCI–Elkton,[1] experienced two episodes

---

[1]    Durham was sentenced on February 1, 2010, by the United States District Court for the Northern District of Illinois to concurrent sentences of 60 months' imprisonment for conspiracy to commit attempted bank extortion of a federally-insured bank in violation of 18 U.S.C. § 371, and 188 months' imprisonment for attempted bank

of tunnel vision, one for thirty minutes and another for five minutes. (*Id.* at 2, 6.) Durham

reported these two incidents to PA-C Elizabeth Choflet on June 7, 2016. (*Id.* at 6.)

Choflet assessed diabetes as the cause. (*Id.*) Durham's radial pulse was 47 to 50 BPM

when examined. (*Id.*) Choflet suggested that Durham needed a "cardiac workup to

include an echo cardiogram and a Holter monitor stress test." (*Id.*) Durham was to

follow-up as needed. (*Id.*) Durham was seen by Dr. Kathy McNutt on June 20, 2016, but

Durham asserts Dr. McNutt took no action on Choflet's suggestion. (*Id.*)

Durham's Complaint then indicates: "On June 27, 2016, finally reviewed the

relevant information and noted that Plaintiff was exhibiting bradycardia (abnormally low

heart rate) and recommended the need for a cardiac workup." (*Id.*) Durham then states

Dr. McNutt maintained a diabetes diagnoses and ordered a fecal blood test. (*Id.*) Durham

asserts Dr. McNutt "failed to recognize bradycardia as an underlying symptom of a

potentially fetal etiology." (*Id.*) Durham was to follow-up as needed. (*Id.*) The grouping

of this information presumably means that Dr. McNutt was the one that reviewed

information on June 27.

On July 12, 2016, Durham was admitted to the cardiac care unit due to an apparent

cerebral vascular accident in progress and worsening bradycardia. (*Id.* at 7.) Dr. John

Dunlop ordered Durham's hospitalization because his heart rate was 40 BPM. (*Id.*)

Durham was brought to Trumbull Memorial Hospital. (*See id.* at 2–3.) Durham was

monitored overnight, with Dr. Larry Woods noting that Durham's heart rate dropped into

---

extortion in violation of 18 U.S.C. § 2113(a). *United States v. Durham*, 645 F.3d 883, 890 (7th Cir. 2011).

the 20s. (*Id.* at 7.) Dr. John Becker, a neurologist, consulted on Durham's case and believed Plaintiff was exhibiting a diagnosis of malingering with a secondary diagnosis of possible subcortical infarct on the left. (*Id.*) Durham was discharged back to prison on July 14, 2016, and reassessed by Dr. McNutt. (*Id.*) Durham asserts "[t]here was no order given to follow the Plaintiff's progress closely to keep watch on Plaintiff's heart rate, and no mention was made at that time regarding Plaintiff's bradycardia." (*Id.*)

Dr. McNutt reassessed Durham on July 15, 2016, diagnosing him with hypertension. (*Id.* at 8.) Durham asserts he was "observed crawling on the floor . . . due to his claimed weakness as witnessed by C. McConnell, RN, who did nothing to assist the Plaintiff either physically or medically." (*Id.*) Dr. McNutt assessed Durham again on July 18, with a "finding suggestive of hemiparesis, however her diagnosis noted as malingering." (*Id.*) Dr. McNutt consulted with Dr. Holly Martinez and Dr. Becker on July 20, 2016, regarding the malingering diagnosis. (*Id.*) That same day, Durham was assessed by Nurse Practitioner Deborah Giaonne who provided a tentative diagnosis of hemiplegia with instructions to follow-up as needed. (*Id.*) On July 29, 2016, Dr. Becker, in consultation with Dr. Dunlop, made a diagnose of "somatoform disorder (faking it)." (*Id.*)

On August 10, 2016, Dr. Larry Woods reviewed the results of Holter monitor testing. (*Id.* at 6.) Dr. Woods' "notes were brief." (*Id.*) He noted Durham's bradycardia, with his heart rate dropping to 20 BPM overnight, but he "did not suggest, direct or order any medications or plan for a workup to determine the underlying cause of the bradycardia." (*Id.* at 7.) Durham asserts the low heartrate mixed with his tunnel vision

and dizziness "should have set off alarms warning of a major transient ischemic attack, versus cerebral vascular accident in progress." (*Id.*)

Durham was seen by Dr. Becker on March 17, 2017, for a six-month follow-up evaluation. (*Id.* at 8.) Durham asserts "there was again no mention of bradycardia" and no further orders were issued. (*Id.*) Shortly thereafter, Durham was transferred to FMC–Rochester on March 28, 2017. (*Id.*) Durham was reassessed by Dr. Charles Slater and Nurse Kathy Lubahn "with a litany of issues based on the records . . . from his prior location," but there was no mention of "Plaintiff's repeated bradycardia events." (*Id.* at 9.) Durham asserts Dr. Slater and Lubahn never read his medical records otherwise they would have seen his documented bradycardia "that has been the underlying cause of all of [his] injuries and disabilities." (*Id.*)

Durham asserts he repeatedly complained of symptoms directly resulting from repeated bradycardia events. (*Id.*) But, because of all his medical providers' failure to properly diagnose or treat his bradycardia, he became "permanently injured and handicapped." (*Id.*) Thus, Durham asserts a medical malpractice claim against all the medical providers. (*Id.*)

After Defendant Trumbull Memorial Hospital and Defendant Midmark Corporation filed their Answers (Doc. Nos. 22, 25), Durham submitted an "Affidavit of Merit" from Dr. Steven A. Holper. (Doc. No. 34, Holper Aff.) Dr. Holper states he is "Board Certified in medical specialties including, but not limited to, Physical Medicine and Rehabilitation," pain management, and that he is a member of the American Society of Addiction Medicine. (Holper Aff. ¶ 1.) Dr. Holper says he "evaluated Hal Durham

concerning symptoms related to his chronic and worsening pain as well as his paralysis. These symptoms are chronic, declining, and ongoing." (*Id.* ¶ 2.) Dr. Holper states Durham's "pain and symptomology are indicative of a life-long medical disability that will require continuous and regular treatments," from medical professionals skilled in both bradycardia and paralysis. (*Id.* ¶¶ 3, 4.) Dr. Holper opined that Durham's injuries are "excruciating and worsening," and that, if left untreated, Durham "will soon permanently lose the use of affected limbs with no possibility of physical rehabilitation." (Holper Aff. ¶ 5.)

The United States moved to dismiss on March 29, 2021. (Doc. No. 48.) The Court set a briefing schedule on that motion, with Durham's response due April 28, 2021. (Doc. No. 55.) The Court reminded Durham of the deadline again on April 19, 2021. (Doc. No. 58 at 2 n.2.) Midmark Corporation moved for summary judgment on April 28, 2021. (Doc. No. 61.) The following day, the Court set a briefing schedule for that motion, with Durham's response due May 28, 2021. (Doc. No. 67.) Durham filed a document on June 7, 2021, entitled "Plaintiff's Motion to Make More Certain." (Doc. No. 73) which this Court interprets as his opposition to Defendants' motions given the timing and because it seeks to explain his claim and medical injuries.[2]

---

[2]    While titled as a motion, this filing seeks no relief other than survival of Durham's Complaint. The Court has considered the filing in conjunction with the motions discussed herein. To the extent it seeks relief other than serving as a reply to Defendants' motions, it should be denied.

## II.   ANALYSIS

### A.  Legal Standard

"Federal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.'" *Barclay Square Prop. v. Midwest Fed. Sav. and Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)). Federal courts must dismiss a claim if it lacks subject-matter jurisdiction over the claim. Fed. R. Civ. P. 12(h)(3), 12(b)(1). When considering a facial attack on jurisdiction in a Rule 12(b)(1) motion, the court "merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015) (quotation omitted). Under such an analysis, the court restricts itself to the pleadings and the non-moving party is afforded the same protections as those provided by a Rule 12(b)(6) motion. *Id.*

In deciding a Rule 12(b)(6) motion to dismiss, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

6

alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). The court must draw reasonable inferences in the plaintiff's favor. *Zink*, 783 F.3d at 1098 (citation omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). But notwithstanding the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter

of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B. Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") gives federal district courts "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Before a lawsuit can be filed against the United States for damages under the FTCA, a claimant "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (stating failure to exhaust administrative remedies bars suit). A "claim that fails to satisfy § 2675(a)'s requirements remains inchoate, unperfected, and not judicially actionable." *Mader v. United States*, 654 F.3d 794, 807 (8th Cir. 2011) (en banc). Thus, "[p]resentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993).

"A claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or

loss of property, personal injury, or death alleged to have occurred by reason of the

incident." 28 C.F.R. § 14.2(a). The claim must be "presented to the Federal agency whose

activities gave rise to the claim." *Id.* § 14.2(b). The claim must be submitted within two

years of it accruing. 28 U.S.C. § 2401(b).

Nowhere in Durham's Complaint does he allege having submitted an

administrative claim to the Bureau of Prisons. Durham had not presented any

administrative claim for damages to the Bureau of Prisons as of March 15, 2021. (Doc.

No. 49, Decl. of Shannon Boldt ¶¶ 5–7.) This failure is fatal to Durham's claims against

the United States as it deprives the Court of jurisdiction. *Bellecourt*, 994 F.2d at 430. As

such, this Court recommends dismissal of the United States as a defendant.

### C. Minnesota Malpractice Claims

Even if the Court were to overlook the jurisdictional defect in Durham's FTCA

claim in failing exhaust administrative remedies, he has failed to comply with Minnesota

requirements for bringing a medical malpractice suit.

Under Minnesota law, a plaintiff "alleging malpractice . . . against a health care

provider which includes a cause of action as to which expert testimony is necessary to

establish a prima facie case" must "serve upon defendant with the summons and

complaint an affidavit as provided in subdivision 3 . . ." Minn. Stat. § 145.682. This

affidavit requires an attestation that:

> (a) the facts of the case have been reviewed . . . with an expert whose
> qualifications provide a reasonable expectation that the expert's opinions
> could be admissible at trial and that, in the opinion of this expert, one or
> more defendants deviated from the applicable standard of care and by that
> action caused injury to the plaintiff; or (b) the expert review . . . could not

reasonably be obtained before the action was commenced because of the applicable statute of limitations.

*Id.* at subd. 3. By requiring production of this type of expert affidavit, the statute intends to eliminate sham malpractice suits, *see Oslund v. United States*, 701 F. Supp. 710, 713 (D. Minn. 1988), given that "malpractice action[s] without supporting expert testimony [are ordinarily] frivolous *per se*." *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 191 (Minn. 1990).

Here, Durham has submitted an affidavit signed by Steven A. Holper, M.D. Dr. Holper was a licensed physician in Nevada. (*See* Doc. No. 49, Gov't Ex. 2 at 2.) Dr. Holper was charged by the Investigative Committee of the Nevada State Board of Medical Examiners with (1) illegally dispensing controlled substances, (2) unsafe or unprofessional conduct, and (3) disreputable conduct. (*Id.*) Dr. Holper entered into a settlement whereby he admitted to the first charge. (*Id.*) The Nevada State Board of Medical Examiners accepted the settlement on September 6, 2019, and Dr. Holper's medical license was immediately revoked, without the possibility for re-instatement for three years. (*Id.*) Durham met Dr. Holper in prison, where he was serving a 41-month sentence for distribution of controlled substances imposed by the United States District Court for the District of Nevada. (Boldt Decl. Ex. D.)

Dr. Holper's affidavit does not meet the statutory requirements of Minn. Stat. § 145.682. "Expert testimony cannot be given by a witness who is not an expert—that is, someone who is not qualified or competent to give an expert opinion." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 427 (Minn. 2002). "The affidavit requirement simply cannot

be met by a witness not reasonably expected to provide an admissible expert opinion at trial." *Id.* It cannot be reasonably expected that Dr. Holper could provide expert testimony at trial. Dr. Holper has been stripped of his license to practice medicine until September 2022, at the earliest. Dr. Holper had no medical license when he "examined" Durham. Dr. Holper and Durham were inmates at FMC–Rochester when the examination supposedly took place, thus there was no medical equipment available to Dr. Holper to properly examine Durham's alleged injuries. Thus, it cannot be said Dr. Holper's affidavit is based on "sufficient facts or data" or is "the product of reliable principles and methods." Fed. R. Evid. 702. Further, Dr. Holper does nothing to explain what the applicable standard of care is or how Defendants deviated from that standard in treating Durham. And finally, Dr. Holper has not described any apparent expertise in cardiac care that would allow him to form an expert opinion on Durham's cardiac treatment or ailments. *See Fakhro v. Mayo Clinic Rochester*, No. 02-cv-626 (JNE/JGL), 2004 WL 909740, at *8 (D. Minn. Mar. 31, 2004) ("While an expert need not be exquisitely qualified in a particular area, he or she must be sufficiently familiar with the same or similar procedure at issue so that he or she can render an opinion as to whether it was negligently performed."). All in all, Dr. Holper's affidavit is so lacking that this Court cannot conclude Durham has complied with Minnesota's expert affidavit requirement.

There are two limited exceptions to this expert affidavit requirement: (1) when "expert testimony is not needed to establish negligence; or (2) if the plaintiff shows excusable neglect in failing to timely serve the affidavits." *Flores v. United States*, 689 F.3d 894, 900 (8th Cir. 2012) (citation omitted). Neither exception applies here.

11

Durham's claim is not one that "fall[s] within an area of common knowledge and developing lay comprehension of medical techniques," so as to make an expert opinion unnecessary. *Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163, 1165 (8th Cir. 1989) (quoting *Hestbeck v. Hennepin Cty.*, 212 N.W.2d 361, 364 (Minn. 1973)). Durham's injuries are not obvious, but involve a complicated claim that medical professionals had appropriate information to diagnose a specific heart ailment but instead reached a different conclusion that Durham finds unacceptable. Such a claim is impossible to deem as within the realm of common or lay knowledge. Further, in Minnesota, excusable neglect may be established if a plaintiff meets four requirements:

> (1) he has a reasonable malpractice claim on the merits, (2) he has a reasonable excuse for failing to comply with the affidavit requirements of § 145.682, (3) he diligently attempted to comply with § 145.682 after notice of the statutory limits, and (4) defendant will not be substantially prejudiced by an extension of time to comply with the statutory time limits.

*Bellecourt v. United States*, 784 F. Supp. 623, 639 (D. Minn. 1992). Durham does not meet these requirements for all the reasons discussed herein.

"Minnesota courts require strict compliance with the procedural requirements set forth in section 145.682." *Flores*, 689 F.3d at 900. The statute is "more than a procedural rule," and "has a jurisdictional component." *Oslund*, 701 F. Supp. at 714. Barring limited exceptions, failure to comply with the statute's requirements is fatal to a plaintiff's malpractice claim. *See Chizmadia*, 873 F.2d at 1164 ("Failure to comply with section 145.682 results in mandatory dismissal with prejudice."). Although this Court acknowledges that procuring an expert affidavit may be a difficult endeavor for a federal inmate acting as a pro se plaintiff, Minnesota Statute § 145.682 does not make exceptions

12

for such plaintiffs. Minn. Stat. § 145.682, subd. 5 (stating that a pro se plaintiff is "bound by [the affidavit] provisions as if represented by an attorney"); *Jackson v. Federal Bureau of Prisons*, 2007 WL 843839, *20, n.17 (D. Minn. Mar. 16, 2007) ("The same provision of expert opinion affidavits apply to actions commenced by *pro se* plaintiffs."). Because expert testimony is necessary to prove medical malpractice, compliance with Minnesota Statute § 145.682 is mandatory. Durham has not complied and his medical malpractice claim must be dismissed as a whole.

### D. Remaining Defendants

As concluded, Durham's claim for medical malpractice fails to meet the procedural prerequisites to bring suit. For the United States, Durham has not complied with the FTCA's administrative exhaustion requirement. And for the United States and Midmark Corp., Durham has not complied with Minnesota's requirements of an expert affidavit in order to bring a claim for medical malpractice. But even dismissing these Defendants by granting their motions, there remain various Defendants in this suit: Trumbull Memorial Hospital—which has appeared and answered—and individual defendants Dr. Larry Woods, Dr. John Becker, and Dr. Holly Martinez.[3] There is nothing unique to these remaining Defendants from Durham's Complaint that has not already

---

[3]    The service status of Dr. Woods is clear: he has yet to be formally served. (Doc. Nos. 58.) The service status of Dr. Becker and Dr. Martinez is less clear. (*See* Doc. No. 37 at 9 (serving Dr. Becker at FCI–Elkton); Doc. No. 38 (purporting to serve "ALL DEFENDANTS" via the U.S. Attorney's Office for the District of Minnesota).) Durham's Complaint does not make clear if Drs. Woods, Becker, or Martinez are government employees or private doctors. From other documents, it appears that Drs. Woods and Becker may be employees of Trumbull Memorial Hospital. (Doc. No. 66.)

been addressed herein. Accordingly, there is no reason for Durham's procedurally inadequate lawsuit to remain pending against these Defendants merely to be dismissed on the same grounds later.[4] This Court recommends dismissing Durham's Complaint as to these non-moving or non-appearing Defendants without prejudice.

**RECOMMENDATION**

Based on the foregoing, and all the record, files, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant United States' Motion to Dismiss and/or for Summary Judgment (**Doc. No. 48**) be **GRANTED**, and that Durham's claims against the United States be **DISMISSED WITH PREJUDICE**;

2.    Defendant Midmark Corporation d/b/a Midmark Diagnostic Group's Motion for Summary Judgment (**Doc. No. 61**) be **GRANTED**, and that Durham's claims against the Midmark Corporation be **DISMISSED WITH PREJUDICE**;

3.    Plaintiff's Motion to Make More Certain (**Doc. No. 73**) be **DENIED AS MOOT**; and

4.    Plaintiff Hal Durham's Complaint (**Doc. No. 1**) be **DISMISSED WITHOUT PREJUDICE** as to all remaining Defendants.

---

[4]    There also may be issues as to whether the Court has personal jurisdiction over any of the remaining Defendants given they are all located in Ohio and provided medical services in Ohio. The Court doubts the District of Minnesota would be the appropriate forum should any claim remain.

Date: June 11, 2021                      *s/ Becky R. Thorson*
                                         BECKY R. THORSON
                                         United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).